## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COMMON GROUND HEALTHCARE
COOPERATIVE,

       Plaintiff,
on behalf of itself and all others
similarly situated,

    vs.

THE UNITED STATES OF AMERICA,

       Defendant.

No. 1:17-cv-00877-KCD
(Judge Davis)


## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT AND TO <u>DIRECT NOTICE TO THE SETTLEMENT CLASS</u>

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ............................................................................1

II.   BACKGROUND ................................................................................................2

  1.  Procedural History ....................................................................................2

  2.  Settlement Negotiations ............................................................................5

  3.  The Settlement Consideration and Release of Claims ..............................7

  4.  Notice and Implementation of the Settlement ..........................................8

III.  THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT ........9

  1.  Legal Standard Governing Approval of Class Action Settlements ..........9

  2.  The Court "Will Likely Be Able" to Approve the Proposed Settlement
      Under Rule 23(e)(2) ..............................................................................11

    1.  The Proposed Settlement is Procedurally Fair. ...............................12

    2.  The Proposed Settlement Provides Thorough Relief to the Class. ...........14

      (a)  Settlement provides more relief than trial. ......................................14

      (b)  The Settlement will be effectively distributed. ..............................16

      (c)  The proposed award of attorney's fees is fair. ...............................16

      (d)  The Parties presently have no other relevant settlement
           agreements ...................................................................................17

    3.  The Proposed Settlement Treats Class Members Equitably ....................17

IV.   THE SETTLEMENT CLASSES ARE CERTIFIABLE ....................................17

V.    NOTICE TO THE CLASSES SHOULD BE APPROVED ..............................18

VI.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ............19

VII.  CONCLUSION ................................................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Barlow v. United States*,
    145 Fed. Cl. 228 (2019) ........................................................................14

*Berkley v. United States*,
    59 Fed. Cl. 675 (2004) ...........................................................................9

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ...................................12

*Common Ground Healthcare Cooperative v. United States*
    (U.S. Feb. 24, 2021) (No. 20-1200) .........................................................5

*Community Health Choice, Inc. v. United States*,
    970 F.3d 1364 (Fed. Cir. 2020) ..........................................4, 5, 13, 14, 15, 17

*Courval v. United States*,
    140 Fed. Cl. 133 (2018) ........................................................................12

*Dauphin Island Prop. Owners Ass'n v. United States*,
    90 Fed. Cl. 95 (2009) ........................................................................9, 13

*In re Fed. Nat'l Mortg. Assoc. Secs., Derivative, & "ERISA" Litig.*,
    4 F. Supp. 3d 94 (D.D.C. 2013) ............................................................12, 13

*Furlong v. United States*,
    131 Fed. Cl. 548 (2017) .........................................................................9

*In re Graña y Montero S.A.A. Sec. Litig.*,
    2021 WL 4173684 (E.D.N.Y. Aug. 13, 2012) ..............................................14

*Lambert v. United States*,
    124 Fed. Cl. 675 (2015) ........................................................................10

*Maine Community Health Options v. United States*
    (No. 20-1162) .....................................................................................5

*Mercier v. United States*,
    156 Fed. Cl. 580 (2021) ........................................................................16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .............................................................................18

*Nat'l Treasury Emps. Union v. United States*,
  54 Fed. Cl. 791 (2002) ...................................................................................14

*Quimby v. United States*,
  107 Fed. Cl. 126 (2012) .................................................................................12

*Raulerson v. United States*,
  108 Fed. Cl. 675 (2013) .................................................................................11

*Sabo v. United States*,
  102 Fed. Cl. 619 (2011) ...................................................................................9

*Sanford Health Plan v. United States*,
  969 F.3d 1370 (Fed. Cir. 2020) .......................................................................4

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................17

*In re TFL-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ................................................17

*In re Vitamins Antitrust Litig.*,
  2000 WL 1737867 (D.D.C. Mar. 31, 2000)) ...................................................17

## Rules/Statutes

28 U.S.C. § 1491(a)(1) ............................................................................................4

42 U.S.C. § 18062 ....................................................................................................3

42 U.S.C. § 18071 ....................................................................................................2

42 U.S.C. § 18082 ....................................................................................................3

ACA § 1342 ..............................................................................................................3

ACA § 1402 ..............................................................................................................2

ACA § 1402, Pub. L. No. 111-148 (2010), 124 Stat. 119 ...............................3, 4, 12

Fed. R. Civ. P. 23 .....................................................................................................9

United States Code Title 26 ......................................................................................7

## <u>Other Authorities</u>

4 William B. Rubenstein, Newberg on Class Actions § 13:13 (6th ed. 2023) ............................... 10

Manual for Complex Litigation (Fourth) § 13.14 (2020).................................................................. 9

RCFC 23................................................................................................................................ *passim*

Plaintiff Common Ground Healthcare Cooperative ("Common Ground" or "Plaintiff") and the Settlement Classes (defined below) respectfully submit this unopposed Motion, pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC" or "Rules"), for an order:

(1) preliminarily approving the Proposed Settlement Agreement with Defendant for the Settlement Classes, attached hereto as Exhibit 1 ("Settlement");

(2) directing notice to the proposed Settlement Classes in connection with the class action settlement, and approving the proposed forms and manner of notice;

(3) authorizing retention of JND Legal Administration as Settlement Administrator; and

(4) scheduling a hearing to determine whether the proposed settlement is fair, reasonable, and adequate under RCFC 23(e).

## I.  <u>PRELIMINARY STATEMENT</u>

After five years of vigorous litigation and three additional years of thorough settlement negotiations, the parties have resolved the certified 2017 CSR Subclass, 2018 CSR Subclass, and 2019 CSR Subclass's (collectively, the "Settlement Classes") claims against the United States of America ("Government" or "Defendant") for a cash payment pursuant to the terms of the Settlement.

The Settlement, if finally approved, will, with the small exception of fewer than a dozen insurers who did not file the attestations necessary for the agreed-upon settlement procedure, resolve each insurer's claims against the Government and will bring the vast majority of this longstanding and hard-fought case to a close.

The Settlement, negotiated at arms-length, is an excellent result for the Settlement Classes. The total of more than $540 million represents a near total recovery for the Settlement Classes (subject to the offsets permitted by the Federal Circuit for CSR-specific claims) and fully releases

and resolves the Settlement Classes' claims under Section 1402 of the Patient Protection and Affordable Care Act ("ACA") against the Government for their failure to pay more than a hundred insurers their duly owed cost-sharing reduction reimbursements.

Plaintiff also proposes a streamlined notice program utilizing the contact information Class Counsel and the Settlement Administrator already possess, and based on the extensive communications Class Counsel has had with Settlement Class members in order for them to provide the necessary attestations to participate in the settlement.

To efficiently resolve this matter, the parties "request that a decision on the motion for preliminary approval of the settlement be made promptly on the papers or that a hearing on the motion for preliminary approval of the settlement be held at the earliest date available to the Court." Settlement ¶ 17.

For these reasons, Common Ground respectfully requests an order: (1) preliminarily approving the proposed settlement with Defendant for the Settlement Classes; (2) directing notice to the proposed Settlement Class in connection with the class action settlement, and approving the proposed forms and manner of notice; (3) authorizing retention of JND Legal Administration as Settlement Administrator; and (4) scheduling a hearing to determine whether the proposed settlement is fair, reasonable, and adequate under RCFC 23(e).

## II.    BACKGROUND

### 1.    Procedural History

In section 1402 of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148 (2010), 124 Stat. 119, Congress created the cost-sharing reduction ("CSR") program to lower the expenses associated with health insurance coverage offered for eligible customers. 42 U.S.C. § 18071. Under the CSR program, insurers must provide reductions to their eligible customers' cost-sharing expenses, such as reductions in co-payments and deductibles, and the

Secretaries of Health and Human Services ("HHS") and the Treasury must reimburse insurers for those reductions. Section 1412 of the ACA, 42 U.S.C. § 18082, authorizes advance payment of premium tax credits ("APTCs") to insurers. In addition, as one of three interrelated risk-mitigation programs, Congress created the risk corridors program in section 1342 of the ACA. 42 U.S.C. § 18062. Plaintiff's respective claims arise under these provisions.

The government stopped making CSR reimbursement payments to issuers in October 2017 after the Attorney General of the United States concluded that such payments were not within any congressional appropriation. On June 27, 2017, Plaintiff Common Ground Healthcare Cooperative filed a Class Action Complaint on behalf of itself and others similarly situated, seeking risk-corridors damages under section 1342 of the ACA for benefit year 2016. Dkt. 1. On November 22, 2017, Plaintiff filed a First Amended Class Action Complaint which added a claim under section 1402 for unpaid cost-sharing reduction payments for the 2017 and 2018 benefit years. Dkt. 10.

On April 17, 2018, the Court certified the following class (the "2017-2018 CSR Class"):

> All persons or entities offering Qualified Health Plans under the Patient Protection and Affordable Care Act in the 2017 or 2018 benefit year, and who made cost-sharing reductions for eligible insureds pursuant to Section 1402 of the Patient Protection and Affordable Care Act, but did not receive a "timely and periodic" payment from the Government of an amount "equal to the value of the reductions" provided to its insureds.

Dkt. 30 at 17. In the same order, the Court appointed Plaintiff as the class representative and appointed Quinn Emanuel Urquhart & Sullivan, LLP lead counsel for the Class. *Id.*

On July 23, 2018, Plaintiff filed a Motion for Summary Judgment on behalf of the Class on its claims for unreimbursed cost-sharing reduction payments for the 2017 benefit year and first two financial quarters of the 2018 benefit year. Dkt. 36. Defendant filed a cross-Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment. Dkt. 39. On February 15, 2019, the Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's Motion to

Dismiss, holding that "plaintiff is entitled to recover the unpaid cost-sharing reduction reimbursements." Dkt. 48 at 1.

On March 22, 2019, Plaintiff filed a Second Amended Class Action Complaint adding a claim under section 1402 for unpaid cost-sharing reduction payments for the 2019 benefit year. Dkt. 59. On May 29, 2020, the Court certified the following class (the "2019 CSR Class"):

> All persons or entities offering Qualified Health Plans under the Patient Protection and Affordable Care Act in the 2019 benefit year, and who made cost-sharing reductions for eligible insureds pursuant to Section 1402 of the Patient Protection and Affordable Care Act, but did not receive a "timely and periodic" payment from the Government of an amount "equal to the value of the reductions" provided to its insureds.

Dkt. 90 at 2. In the same order, the Court appointed Plaintiff as the class representative and appointed Quinn Emanuel Urquhart & Sullivan, LLP lead counsel for the Class. *Id.* at 3.

Defendant appealed this Court's grant of Plaintiff's Motion for Summary Judgment and Denial of Defendant's Motion to Dismiss, and on August 14, 2020, the United States Court of Appeals for the Federal Circuit held that "the cost-sharing reduction reimbursement provision imposes an unambiguous obligation on the government to pay money and that the obligation is enforceable through a damages action in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1)." *Sanford Health Plan v. United States*, 969 F.3d 1370, 1372-73 (Fed. Cir. 2020). The United States Court of Appeals for the Federal Circuit held in *Community Health Choice, Inc. v. United States*, 970 F.3d 1364, 1367 (Fed. Cir. 2020), that the Government was obligated to pay the plaintiff insurers the full CSR amounts owed each year under the statute, reduced by "the amount of additional premium tax credit payments that each insurer received as a result of the government's termination of cost-sharing reduction payments." The Federal Circuit also noted that, upon remand, the plaintiff insurers may prove that "other factors, such as market forces or increased medical costs" may have caused some of the silver-level premium increases

and if so, "the government's liability is not reduced by the tax credits attributable to these other factors." *Id.* at 1380.

On February 24, 2021, Plaintiff filed a petition for a writ of certiorari to the United States Supreme Court seeking review of the Federal Circuit's September 30, 2020 decision entering judgment consistent with the Federal Circuit's decision in *Community Health Choice*. *See* Pet. Writ Cert., *Common Ground Healthcare Cooperative v. United States* (U.S. Feb. 24, 2021) (No. 20-1200). On June 21, 2021, the United States Supreme Court denied Plaintiff's petition. The Supreme Court also denied the Government's conditional cross-petition for certiorari regarding the same (No. 20-1536). *See* Orders List (U.S. June 21, 2021). Additionally, on that same day, the Court denied the petition for writ of certiorari and the Government's conditional cross-petition in *Maine Community Health Options v. United States* (No. 20-1162), which also sought review of the Federal Circuit's August 14, 2020 decision. *See* Orders List (U.S. June 21, 2021).

### 2. Settlement Negotiations

With appeals exhausted, liability established, and a general framework for damages ordered, by mid-2021 the parties began discussing resolving damages without further litigation. Dkt. 149. During these conversations, the parties agreed that Class Counsel would engage an experienced actuarial expert to develop a streamlined methodology for settlement purposes, to be shared with the Department of Justice, after which the Government would review the methodology and provide any substantive feedback to Plaintiff's counsel. Ex. 2, Dec. 3 2021 Letter. On December 3, 2021, Class Counsel provided the Government with a proposal from Mr. Mark Fish, Managing Director at FTI Consulting with more than 24 years of experience in the healthcare industry, which calculated the CSR settlement amount as the "Premium Tax, User Fee and HIT Increase" plus the "CSR Payments less Silver Load Offset." *Id.* at 2; *see also* Ex. 3, FTI Report at 8. The proposal further broke out the calculation and provided data sources for the computation:

> **CSR Settlement:    Step 1 = APTC Payments x Silver Load % x (Premium Tax % + User Fee % + HIT %)**
> **+ Step 2 = CSR Payments – (APTC Payments x Silver Load %)**

FTI Report at 8.

For the next nearly two years, and with the help of the Court, the parties exchanged numerous letters and participated in numerous calls negotiating the proposed methodology—for example, whether to use federal, state, or county weighted-average silver loads to calculate any offset and the related methodology for averaging, or whether to include taxes and fees in the reimbursement. *See*, *e.g.*, Dkts. 157, 160, 162, 164, 165, 167-68, 171, 175, 182, 199-201. To streamline the process, Plaintiff's methodology expressly did not consider the impacts of "higher premium rates due to Silver Loading leading to reduced membership," "Risk Adjustment–based on statewide average which could be artificially high," the "settlement payments on MLR" or "Silver Loading on overall insurer results." FTI Report at 13.

In September 2023, the parties reached tentative agreement regarding the actuarial methodology to employ to calculate damages. Dkt. 202. However, in order to effectuate that methodology, the Government needed each Settlement Class Member to gather and provide the requisite data needed for the experts to compute the insurer's damages. Dkt. 203. Specifically, one of the requirements for the settlement procedure was that each CSR Class Member provide an attestation to the United States specifying the Metal Levels for which each Settlement Class Member loaded CSR costs into premiums for each benefit year 2018-2020. Although the vast majority of Settlement Class Members provided these attestations, a small number of 2017-2018 CSR Class and 2019 CSR Class Members did not, despite repeated requests and other efforts to contact them from Class Counsel.

In parallel to this data gathering process, the parties negotiated and formalized the formal Settlement Agreement. *See, e.g.*, Dkt. 204. And in the intervening months, the parties and experts calculated the final settlement award on a per-insurer basis and finalized the draft Settlement.

With the settlement nearly finalized, the parties filed a Joint Motion to divide the two litigation classes into four subclasses, (1) the "2017 CSR Subclass," (2) the "2018 CSR Subclass," (3) the "2019 CSR Subclass," and (4) the "Not-Pursuing-Claims-Beyond-2017 Subclass," to enable the 2017 CSR Subclass, 2018 CSR Subclass, and 2019 CSR Subclass to move forward with a proposed settlement with the Government, and to give the Not-Pursuing-Claims-Beyond-2017 Subclass one last opportunity to provide necessary paperwork to join in any such settlement thus effectuating the resolution of the first, second, and third subclasses' claims more expeditiously. Dkt. 256. On April 7, 2025, the Court ordered the classes so subdivided. Dkt. 258.

### 3.  The Settlement Consideration and Release of Claims

The parties present this Settlement, which ensures a total release of the Settlement Classes' claims "in exchange for" and "upon payment of the full amount" of an award by the United States in the amount set forth for each member" of the Settlement Classes as listed in Exhibits A and B, "inclusive of interest with each party to bear its own costs, attorney fees, and expenses." Settlement ¶¶ 5-9. Similarly, the United States likewise "to the extent permitted by law, releases, waives, withdraws, and abandons any and all claims against the [Settlement Class] based upon, arising out of, or in any way directly related to CSR reimbursements" except "(a) any liability arising under Title 26, United States Code (Internal Revenue Code); (b) any criminal liability; and (c) any fraud." *Id.* ¶ 11.

The Settlement has "been reviewed and [has] been accepted on behalf of the United States Attorney General." *Id.* ¶ 10. Upon full payment, the Settlement Class and Defendant agree to jointly "stipulate[] to the dismissal of this action with prejudice." *Id.* ¶ 12.

The parties agree that as soon as the Court preliminarily approves of the Settlement, Class Counsel shall effectuate notice to the class of the Settlement, the date of the fairness hearing pursuant to RCF 23(e), and the manner and deadline for written objections, if any. *Id.* ¶ 18. In the same pursuit of efficiency, the parties "request that a decision on the motion for preliminary approval of the settlement be made promptly on the papers or that a hearing on the motion for preliminary approval of the settlement be held at the earliest date available to the Court." *Id.* ¶ 17.

### 4. **Notice and Implementation of the Settlement**

In accordance with Settlement section 17, Plaintiff proposes a streamlined notice program designed by proposed experienced Settlement Administrator JND Legal Administration. *See* Declaration of Leonard Greene ("Greene Decl."), concurrently submitted herewith. Under Plaintiff's proposal, JND Legal Administration, will send, by electronic mail, the Notice of Class Action Settlement ("Notice") to all Settlement Class members (as listed on Exhibits A and B to the Settlement Agreement) at the e-mail addresses provided in connection with the opt-in notice process, and (if applicable) subsequently updated as part of the attestation process and/or the risk corridors attorney fee remuneration process (for overlapping CSR and risk corridor class members). Greene Decl. ¶ 3. For any email returned as undeliverable, the Administrator will send the Notice to the Settlement Class Member by first-class mail and make all reasonable efforts to contact the Settlement Class Member. *Id.* ¶ 4.

The Notice provides important information regarding the Settlement, along with the rights of Settlement Class members in connection therewith, including their rights (and the deadline) to withdraw from the Settlement Class under Rule 23(e)(4) or file a written objection to the Settlement under Rule 23(e)(5), as well as Class Counsel's request for attorneys' fees and litigation expenses. *See* Green Decl. Ex A; *see also* Settlement ¶¶ 19-21 (outlining objection process). The Notice also provides an explanation of the procedures for allocating and distributing the funds

pursuant to the Settlement, the date and time of the fairness hearing, and how to obtain more information. *See* Green Decl. Ex A.

### III.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT

#### 1.  Legal Standard Governing Approval of Class Action Settlements

Settlement is a strongly favored method for resolving class action litigation. *See Sabo v. United States*, 102 Fed. Cl. 619, 626 (2011) ("In general, '[s]ettlement is always favored,' especially in class actions where the avoidance of formal litigation can save valuable time and resources."); *Berkley v. United States*, 59 Fed. Cl. 675, 681 (2004) ("Class actions, by their complex nature, carry with them a particularly strong public and judicial policy in favor of settlement.").

RCFC 23(e) requires judicial approval of class action settlements.[1] Such approval is a two-step process. First, under RCFC 23(e)(1), the court performs a preliminary review of the terms of the proposed settlement to determine whether it is sufficient to warrant notice to the class and a hearing (the relief sought through this motion). Second, under RCFC 23(e)(2), after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement (the relief sought through a subsequent final approval motion). *See Furlong v. United States*, 131 Fed. Cl. 548, 550 (2017) ("In implementing RCFC 23(e), courts typically review the proposed settlement for a preliminary fairness evaluation and direct notice of the [proposed] settlement to be provided to the class, and then grant final approval of the proposed settlement following notice to the class and a fairness hearing."); *see also* Manual for Complex Litigation (Fourth) § 13.14 (2020).

---

[1]  "[RCFC 23] is modeled on Fed. R. Civ. P. 23, and while there are differences, cases from other federal courts that apply Fed. R. Civ. P. 23 are relevant to this court's interpretation of RCFC 23." *Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102 (2009).

Regarding the first step, a court should grant preliminary approval and authorize notice of a settlement to the class upon a finding that the court "*will likely be able*" to (i) finally approve the settlement under RCFC 23(e)(2) and (ii) certify the class for purposes of the settlement. *See* RCFC 23(e)(1)(B).

In considering whether final approval is likely, RCFC 23(e)(2) provides that courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.*

In sum, preliminary approval should be granted where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." 4 William B. Rubenstein, Newberg on Class Actions § 13:13 (6th ed. 2023) (alteration in original); *see also Sutton*, 120 Fed. Cl. at 530 ("At the preliminary approval stage of the proceedings, the court needed only to consider whether the settlement had any obvious deficiencies."); *Lambert v. United States*, 124 Fed. Cl.

675, 678 (2015) (preliminary approval granted by court upon finding no "collusive activity, preferential treatment, or other deficiencies" in the settlement).

At the second step, after preliminary approval has been granted and notice provided to the Settlement Class, although there are "no definitive list of factors that the Court must apply" to assess whether to finally approve a proposed settlement, the Court routinely looks at the following six factors which largely overlap with the four considerations during preliminary approval:

> 1. The relative strengths of plaintiffs' case compared to the proposed settlement;
>
> 2. The recommendation of class counsel, taking into account the adequacy of class counsels' representation;
>
> 3. The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;
>
> 4. The fairness of the settlement to the entire class;
>
> 5. The fairness of the provision for attorney's fees; and
>
> 6. The ability of the defendant to withstand greater judgment, taking into account whether the defendant is a governmental actor or private entity.

*Raulerson v. United States*, 108 Fed. Cl. 675, 677 (2013) (internal citations omitted). And in evaluating these factors "[t]he Court has considerable discretion as to what weight to afford each factor in the factual context of the case before it, and settlement is always favored. *Id*. (internal citations omitted).

## 2.  The Court "Will Likely Be Able" to Approve the Proposed Settlement Under Rule 23(e)(2)

A court may approve a proposed class action settlement upon finding it to be "fair, reasonable, and adequate." RCFC 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, "courts consider both the settlement agreement's substantive terms and the

negotiation process that led to it." *Quimby v. United States*, 107 Fed. Cl. 126, 130 (2012); *see also Courval v. United States*, 140 Fed. Cl. 133, 138 (2018) (in approving settlement, "the court looks to the 'paramount' twin elements of procedural and substantive fairness").

### 1.    The Proposed Settlement is Procedurally Fair.

The first two elements under RCFC 23(e), whether class representatives and class counsel have adequately represented the class and whether the proposal was negotiated at arm's length, assess procedural fairness. *See Courval*, 140 Fed. Cl. at 139 ("Procedural fairness is concerned with whether the settlement resulted from arms-length negotiations and whether plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.") (internal citations omitted).

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Fed. Nat'l Mortg. Assoc. Secs., Derivative, &"ERISA" Litig.*, 4 F. Supp. 3d 94, 102 (D.D.C. 2013); *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) (applying an "initial presumption of fairness and adequacy" where "[s]ettlement was reached by experienced, fully-informed counsel after arm's-length negotiations"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

The proposed Settlement embodies all the hallmarks of a procedurally fair resolution under RCFC 23(e)(2). Class Counsel's settlement posture was informed by the extensive, years-long litigation efforts that preceded the proposed Settlement, including an appellate ruling confirming that the Government is liable to the Settlement Classes for its failure "to make cost-sharing reduction payments under section 1402" and the additional holdings that, as to damages, the 2017 subclass is "entitled to recover as damages the full amount of unpaid cost-sharing reduction reimbursements" and that "the appropriate measure of damages" for the 2018 and 2019 subclasses

are the unpaid cost-sharing reduction reimbursements reduced by "the amount of additional premium tax credit payments that each insurer received as a result of the government's termination of cost-sharing reduction payments." *Cmty. Health Choice*, 970 F.3d at 1367-71. As discussed above, Class Counsel zealously pursued this case—pioneering the theory of liability, litigating the claims for many years (in multiple courts), defeating the Government's motion to dismiss (Dkt. 48), moving for and obtaining summary judgment (*id.*), obtaining certification of the four subclasses, three of which comprise the Settlement Class here (Dkts. 30, 90, 258), and securing a $1.7 billion partial Judgment on behalf of the cost-sharing reduction Class (Dkts. 71, 111).

With clear guidelines from the Federal Circuit as to the appropriate damages, the parties turned to negotiating a settlement to avoid further delay to the Settlement Classes who were owed repayment between five and nine years ago. These negotiations, which involved complex actuarial calculations undertaken by experts, were conducted at arm's length over a period of years. *Dauphin*, 90 Fed. Cl. at 107 (approving settlement that was "achieved through good-faith, non-collusive negotiation"). Class Counsel were well-informed of the facts and issues concerning damages streams and the relative strengths and weaknesses of each side's litigation position. Class Counsel have decades of experience litigating complex class action and healthcare cases and have negotiated settlements in a wide range of cases. Dkt. 30 at 12-13 ("The court finds that Quinn Emanuel has the experience and resources necessary to handle class actions"). Class Counsel used their specific case knowledge and experience to negotiate the proposed Settlement, which will (if approved) fully resolve this complex and challenging case as to each class member that has filed attestations in this case. *See In re Fed. Nat'l Mortg. Assoc. Secs., Derivative, &"ERISA" Litig.*, 4 F. Supp. 3d at 107 ("The opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

Government counsel, who are highly experienced and capable, vigorously advocated their client's positions in the settlement negotiations. And the Settlement has been reviewed and accepted by the Attorney General. "Absent fraud or collusion," as is the case here, courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at \*11 (E.D.N.Y. Aug. 13, 2012) (alterations in original); *Nat'l Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 797 (2002) ("[T]he professional judgment of plaintiff's counsel is 'entitled to considerable weight in the court's determination of the overall adequacy of the settlement.'").

### 2.    The Proposed Settlement Provides Thorough Relief to the Class.

After assessing procedural fairness, courts look to the substantive fairness of a proposed settlement. A key factor in assessing whether to approve a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* RCFC 23(e)(2)(C); *see also Barlow v. United States*, 145 Fed. Cl. 228, 234 (2019) ("Substantive fairness requires the Court to consider the balance of the likely costs and rewards of further litigation.").

### (a)    Settlement provides more relief than trial.

The Settlement Classes have a strong case, and the Settlement value, at a collective value of more than $540 million, representing near total recovery, reflects that. The United States Court of Appeals for the Federal Circuit instructed that the damages here would be the full CSR amounts owed each year under the statute, reduced by "the amount of additional premium tax credit payments that each insurer received as a result of the government's termination of cost-sharing reduction payments." *Cmty. Health Choice, Inc.*, 970 F.3d at 1367. The Federal Circuit also noted that, upon remand, the plaintiff insurers may prove that "other factors, such as market forces or increased medical costs" may have caused some of the silver-level premium increases and if so,

"the government's liability is not reduced by the tax credits attributable to these other factors." *Id*. at 1380.

The Settlement value reflects this instruction and offers the parties' best approximation of those net damages. As explained above, *see supra* § II(2), Common Ground retained experts at FTI Consulting who formulated an actuarial methodology to calculate the CSR amounts owed to the Settlement Classes and the premium tax credit payment values. *See generally* FTI Report. With very minor modifications, the Government adopted Plaintiff's proposal.

And the Settlement is actually more favorable to Class Members than litigating damages, because it flexibly provides the opportunity for Class Members to elect between multiple methodologies in the pursuit of efficiency and/or increased damages. This is because the Government agreed, for purposes of for purposes of medical loss ratio ("MLR") reporting and rebate calculations, to allow, but not to require Class Members to "choose to include the portion of the settlement amount net of any and all legal fees, costs and expenses (including, but not limited to, CSR reconciliation costs) incurred in pursuing and obtaining that settlement payment, rather than the entire settlement amount" and further allow Class Members to "report – for MLR purposes and rebate calculations – settlement payments (net of legal fees and costs) in the year actually received, rather than the year for which the CSR payments were originally owed" which is a boon to Class Members who are therefore not obliged to recalculate and repay old MLR payments. *See* Ex. 4, Sept. 19, 2023 Letter; *see also* Settlement ¶ 13.

Notably, the Settlement does not include any discounts for litigation risk or any other factors. And the Settlement award includes interest. *Id.* ¶¶ 5, 8.

The near total relief to the class is more than adequate considering "the costs, risks, and delay of trial and appeal." Rule 23(e)(2)(C)(i). With the guiderails from the Federal Circuit's

decision regarding the damages owed by Defendant to the Settlement Classes, there would be little to gain by expending considerable time and expense litigating damages to conclusion. *See Mercier v. United States*, 156 Fed. Cl. 580, 586-87 (2021) ("In addition to the[] risks of continued litigation, there is no question that further litigation would be expensive, complex, and likely of substantial duration…. A fair settlement is preferable to years of additional litigation."). As it is, negotiating a suitable actuarial methodology for calculating damages and gathering the relevant data from each class member to employ the methodology has taken, quite literally, years. In contrast, the Settlement provides a recovery representing nearly 100% of the class's net damages now.

(b)    <u>The Settlement will be effectively distributed.</u>

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" likewise favors settlement. Rule 23(e)(2)(C)(ii). As defined in the Notice plan below, distribution of relief to the class will be in a *pro rata* form, based on the individual losses suffered by each class member. The Settlement Administrator will facilitate notice. Because the Settlement Classes are already certified and are an opt-in group of class members, facilitating notice with the previously gathered contact information used in the opt-in and attestation processes will be simple.

(c)    <u>The proposed award of attorney's fees is fair.</u>

The terms of the proposed award of attorney's fees, including the timing of payment is more than fair to the Class. *See* Rule 23(e)(2)(C)(iii). Assuming final approval of this Settlement, Class Counsel intends to move for attorney's fees after final approval. Class Counsel intends to seek 5% of the Settlement award, consistent with its award for the judgments for the Risk Corridors classes. *See, e.g.*, Dkts. 153, 154. Class Counsel respectfully requests that the Court distribute 95% of the Settlement award pending Class Counsel's fee request to ensure the Settlement Classes

16

expeditiously receive their long overdue damages, consistent with prior practice in this case. *See, e.g.*, Dkt. 152 (disbursing 95% of the judgment funds to class and holding 5% in escrow pending resolution of Class Counsel's motion for fees).

         (d)      <u>The Parties presently have no other relevant settlement</u>

                   <u>agreements.</u>

The Settlement is the only agreement made by the Parties in connection with the Settlement. There are no additional agreements to identify. *See* Rule 23(e)(2)(C)(iv).

       **3.**      **<u>The Proposed Settlement Treats Class Members Equitably.</u>**

The proposed Settlement contemplates that each class member receives "the full amount of unpaid cost-sharing reduction reimbursements" less any applicable "additional premium tax credit payments that each insurer received as a result of the government's termination of cost-sharing reduction payments." *Cmty. Health Choice, Inc.*, 970 F.3d at 1367-71. Such *pro rata* distributions of settlements are routinely employed and approved. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on … loss is clearly a reasonable approach."); *In re TFL-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) (approving a *pro rata* plan and citing several cases for this holding, including *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000)). Thus, the allocation method set forth in the Notice treats all Settlement Class members equitably, further supporting preliminary approval of the Settlement.

## IV.    **<u>THE SETTLEMENT CLASSES ARE CERTIFIABLE</u>**

The second part of the preliminary settlement approval process is to determine whether the Action may be maintained as a class action for settlement purposes under RCFC 23. *See* RCFC 23(e)(1)(B)(ii). Here, the Court previously certified the 2017-2018 CSR Class on April 17, 2018. Dkt. 30 at 17. On May 29, 2020, the Court certified the 2019 CSR Class. Dkt. 90 at 2. In certifying

these classes, the Court found that the classes each satisfied RCFC 23(a)'s numerosity, commonality, typicality, and adequacy requirements, as well as that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Dkts. 30, 90.

On April 7, 2025, the Court granted the parties' joint motion to divide the 2017-2018 CSR Class into four subclasses: (1) the 2017 CSR Subclass, (2) 2018 CSR Subclass, (3) 2019 CSR Subclass, and (4) Not-Pursuing-Claims-Beyond-2017 Subclass. The first three subclasses overlap entirely with the Settlement Class definitions. *See* Settlement at 1 n.1.

The opt-in period has concluded and the entities that make up the Settlement Classes are set forth in the Settlement. *Id.* at Exs. A, B. Because the Court has already certified classes that are coextensive with the Settlement Classes, Common Ground respectfully submits that it has already effectively determined that, pursuant to RCFC 23(e)(1)(B) it "will likely be able to" certify the Settlement Classes.

## V.    NOTICE TO THE CLASSES SHOULD BE APPROVED

RCFC 23(c)(2)(B) requires the Court to direct to a class certified "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, RCFC 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Moreover, notice must "afford [interested parties] an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Given its familiarity with the case and its possession of relevant contact information for Settlement Class members, Plaintiff requests that the Court authorize Class Counsel's retention of JND as the Administrator for the Settlement. Under Plaintiff's proposal, JND Legal Administration, will send, by electronic mail, the Notice of Class Action Settlement ("Notice") to all Settlement Class members (as listed on Exhibits A and B to the Settlement) at the e-mail

addresses provided in connection with the opt-in notice process and (if applicable) subsequently updated as part of the attestation process and/or the risk corridors attorney fee remuneration process (for overlapping CSR and risk corridor class members). Greene Decl. ¶ 3. For any email returned as undeliverable, the Administrator will send the Notice to the Settlement Class Member by first-class mail and make all reasonable efforts to contact the Settlement Class Member. *Id.* ¶ 4.

The Notice provides important information regarding the Settlement, along with the rights of Settlement Class members in connection therewith, including their rights (and the deadline) to withdraw from the Settlement Class(es) under Rule 23(e)(4) or file a written objection to the Settlement under Rule 23(e)(5), as well as Class Counsel's request for attorneys' fees and litigation expenses. Green Decl. Ex. A; *see also* Settlement ¶ 19. The Notice also provides an explanation of the procedures for allocating and distributing the funds pursuant to the Settlement, the date and time of the fairness hearing, and how to obtain more information. Green Decl. Ex. A.

The means by which Plaintiff proposes providing notice of the Settlement to the Settlement Class members represents "the best notice that is practical under the circumstances" and easily satisfies the requirements of due process and RCFC 23. RCFC 23(c)(2)(b) ("The notice may be by one or more of the following: United States mail, *electronic means*, or other appropriate means."). This also ensures as quick an approval process as possible, so that Settlement Class members can hopefully receive payment this year.

Accordingly, Plaintiff respectfully submits that the Court should approve the proposed manner and form of providing notice of the Settlement to the Settlement Class members.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (*i.e.*, the fairness hearing, disseminating notice, and deadline for objecting

to the Settlement). Plaintiff respectfully proposes the schedule set forth in the chart below, as set forth in the proposed Preliminary Approval Order. Additionally, Plaintiff requests that the Court schedule the fairness hearing for a date 42 calendar days (7 weeks) after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

Class Counsel proposes this compressed schedule to maximize the chance that Settlement Class members receive their settlement payments this calendar year, since past practice has shown that the Treasury will not pay out amounts from the Judgment Fund until at least 60 days following a judgment from this Court. All Settlement Class members have been kept apprised of the status of the Settlement due to their need to submit attestations to participate in the Settlement. Class Counsel therefore respectfully believes that it has already effectively provided notice of the Settlement and that this schedule will balance due process with the reality that many Settlement Class members wish to receive their settlement funds this year, if possible.

| Event | Proposed Deadline |
|-------|-------------------|
| Entry of order granting preliminary approval and directing notice to the class regarding the Settlement Agreements | X |
| Notice campaign to begin | X + 2 days |
| Last day for objections and requests for exclusion from the Settlement Class | X + 21 days |
| Last day for motions in support of final approval of settlement | X + 28 days |
| Final Approval (Fairness) Hearing | X + 42 days<br><br>(Two weeks after the final approval motion deadline, or at the earliest convenience of the Court) |

## VII.    CONCLUSION

For the foregoing reasons, Common Ground respectfully requests that the Court grant the attached proposed Order, which (1) preliminarily approves the proposed Settlement, (2) directs notice to the Settlement Classes, (3) authorizes retention of JND Legal Administration as the Settlement Administrator; and (4) schedules a fairness hearing to determine whether the proposed Settlement is fair, reasonable, and adequate under Rule 23(e).

Dated: August 15, 2025                         Respectfully submitted,

                                               QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP

                                               */s/ Adam B. Wolfson*
                                               Adam B. Wolfson
                                               adamwolfson@quinnemanuel.com
                                               865 S. Figueroa Street
                                               Los Angeles, California 90017
                                               Telephone:  (213) 443-3000
                                               Facsimile:  (213) 443-3100

                                               Andrew H. Schapiro
                                               andrewschapiro@quinnemanuel.com
                                               191 N. Wacker Drive, Suite 2700
                                               Chicago, Illinois 60606
                                               Telephone:  (312) 705-7400
                                               Facsimile:  (312) 705-7401

                                               *Attorneys for Plaintiff Common Ground*
                                               *Healthcare Cooperative and the Classes*